No. 25-70010

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JUAN RAUL NAVARRO RAMIREZ,
*Petitioner-Appellant*,

vs.

ERIC GUERRERO, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,
*Respondent-Appellee.*

**On Appeal from the United States District Court for the Southern District of Texas,
McAllen Division, No. 7:18-CV-00386**

**PETITIONER-APPELLANT'S REPLY IN SUPPORT OF APPLICATION FOR A CERTIFICATE
OF APPEALABILITY ("COA") AND BRIEF IN SUPPORT**

JON M. SANDS
FEDERAL PUBLIC DEFENDER
District of Arizona

JENNIFER Y. GARCIA (AZ NO. 021782)
    *Counsel of Record*
SONIA L. FLEURY (CA NO. 298534)
ASSISTANT FEDERAL PUBLIC DEFENDERS
250 North 7th Avenue, Suite 600
Phoenix, Arizona 85007
(602) 382-2816 voice
(602) 382-2800 facsimile
Jennifer_Garcia@fd.org
Sonia_Fleury@fd.org

*Counsel for Petitioner-Appellant Juan Raul
Navarro Ramirez*

# TABLE OF CONTENTS

Table of Authorities................................................................................................ii

Claim 1 ..................................................................................................................2

Trial counsel's failure to present and explain all readily available mitigating
    evidence was constitutionally deficient and prejudicial to the outcome of
    Ramirez's sentencing proceeding.............................................................................2

    1.     Claim One was never adjudicated in state court. .........................................3

    2.     Reasonable jurists could debate the district court's finding that
        Ramirez did not meet his burden under *Martinez* and *Trevino* to prove
        that his state habeas counsel were ineffective for failing to raise his
        trial-counsel IAC claim. .............................................................................6

Claim 4H...............................................................................................................15

Ramirez's Fifth, Sixth, and Fourteenth Amendment rights were violated when the
    trial court failed to suppress Ramirez's involuntary statements derived from
    his police interrogation. .....................................................................................15

    1.     Reasonable jurists could debate whether new evidence offered in
        support of Claim 4H renders it unexhausted and whether any default is
        overcome by the *Schulp* actual innocence gateway. ...................................16

Conclusion ............................................................................................................20

Certificate of Complicance....................................................................................22

Certificate of Service ............................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Stephens*,
805 F.3d 617 (5th Cir. 2015) ................................................................ 9

*Anderson v. Johnson*,
338 F.3d 382 (5th Cir. 2003) .............................................................. 17

*Barefoot v. Estelle*,
463 U.S. 880 (1983) ............................................................................. 2

*Bennett v. United States*,
119 F.3d 470 (7th Cir. 1997) ............................................................... 5

*Buck v. Davis*,
580 U.S. 100 (2017) ..................................................................... 1, 16

*Carty v. Thaler*,
583 F.3d 244 (5th Cir. 2009) ............................................................. 13

*Chambers v. Mississippi*,
410 U.S. 284 (1973) ........................................................................... 10

*Conner v. Quarterman*,
477 F.3d 287 (5th Cir. 2007) ....................................................... 16, 17

*Eddings v. Oklahoma*,
455 U.S. 104 (1982) ........................................................................... 13

*Escamilla v. Stephens*,
602 F. App'x 939 (5th Cir. 2015) ...................................................... 12

*Franklin v. Jenkins*,
839 F.3d 465 (6th Cir. 2016) ............................................................... 6

*Harrington v. Richter*,
562 U.S. 86 (2011) ............................................................................. 10

*In re Hill*,
715 F.3d 284 (11th Cir. 2013) ............................................................. 5

*Lockett v. Ohio*,
438 U.S. 586 (1978)........................................................................13

*Martinez v. Ryan*,
566 U.S. 1 (2012).......................................................................4, 6

*Miller-El v. Cockrell*,
537 U.S. 322 (2003)....................................................................1, 2

*Nelson v. Lumpkin*,
72 F.4th 649 (5th Cir. 2023) ...............................3, 4, 5, 18, 19

*Porter v. McCollum*,
558 U.S. 30 (2009)........................................................................13

*Rompilla v. Beard*,
545 U.S. 374 (2005).....................................................................13

*Ruiz v. Stephens*,
728 F.3d 416 (5th Cir. 2013) ....................................................12

*Schlup v. Delo*,
513 U.S. 298 (1995).......................................16, 17, 18, 19, 20

*Sears v. Upton*,
561 U.S. 945 (2010).....................................................................10

*Skinner v. Quarterman*,
528 F.3d 336 (5th Cir. 2008) .................................................2, 15

*Tennard v. Dretke*,
542 U.S. 274 (2004)........................................................................1

*Trevino v. Thaler*,
569 U.S. 413 (2013)....................................................................4, 6

*United States v. Fields*,
483 F.3d 313 (5th Cir. 2007) ....................................................10

*Wiggins v. Smith*,
539 U.S. 510 (2003)..........................................................9, 12, 13

*Williams v. Taylor*,
529 U.S. 3626 (2000)...................................................................13

*Wilson v. Zapata Off-Shore Co.*,
   939 F.2d 260 (5th Cir. 1991) ............................................................. 11, 12

**State Cases**

*Ex parte Garza*,
   620 S.W.3d 801 (Tex. Crim. App. 2021)...................................... 9, 13, 14, 15

**Federal Statutes**

28 U.S.C. § 636 .................................................................................... 16

28 U.S.C. § 2254(d).......................................................................... 3, 5, 6, 7

**Rules**

Federal Rule of Evidence 803 ............................................................... 11, 12

Petitioner-Appellant Juan Raul Navarro Ramirez hereby incorporates the arguments previously advanced in his application for certificate of appealability ("COA") and supporting brief and does not repeat arguments made therein. (ECF No. 40.) However, he specifically replies to the following arguments advanced by Respondent in his response in opposition to the application for COA. (ECF No. 55 ("Opp.").)

The standard for granting a COA is not a high one. "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). A habeas petitioner "need only demonstrate 'a substantial showing of the denial of a constitutional right'" to obtain a COA. *Miller-El*, 537 U.S. at 327 (quoting 28 U.S.C. § 2253(c)(2)). The Supreme Court has repeatedly cautioned courts of appeal that "[t]he COA inquiry . . . is not coextensive with a merits analysis." *Buck*, 580 U.S. at 115. Rather, it is a "threshold question [that] should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Id.* Indeed, if a respondent's arguments against a petitioner's claims involve lengthy briefing and complex arguments, as they do here, this fact weighs in support of granting a COA. *See id.* at 117. "A claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.*; *see also Miller-El*, 537 U.S. at 338; *Tennard v. Dretke*, 542 U.S. 274, 281–88 (2004).

Moreover, the fact that this is a death-penalty case further counsels in favor of granting a COA. *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983) (noting that in a capital case, "the nature of the penalty is a proper consideration" in determining whether to issue a COA). Despite Respondent's arguments to the contrary, Ramirez has shown that these two claims meet that low standard for a COA to issue—that reasonable jurists could debate the district court's rulings—and that these two claims deserve encouragement to proceed further. *Miller-El*, 537 U.S. at 327. Ramirez respectfully requests that the Court grant COAs as to these two claims and order briefing and oral arguments on the merits.

**Claim 1**

**Trial counsel's failure to present and explain all readily available mitigating evidence was constitutionally deficient and prejudicial to the outcome of Ramirez's sentencing proceeding.**

The Court should issue a COA on this claim. Even if the Court believes that "every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail" on this claim, the Court must still issue a COA if a reasonable jurist "would find the district court's assessment of [this] constitutional claim[] debatable or wrong." *Skinner v. Quarterman*, 528 F.3d 336, 340–41 (5th Cir. 2008) (quoting *Miller-El*, 537 U.S. at 336, 338). Respondent has not refuted Ramirez's arguments that reasonable jurists could debate the district court's resolution of his *Martinez/Trevino* arguments and its ultimate procedural default finding, nor the arguments that Ramirez has made a substantial showing of the denial of a constitutional right.

**1. Claim One was never adjudicated in state court.**

Claim One of Ramirez's amended habeas petition is as follows: "Ramirez was denied effective assistance of counsel during the penalty phase . . . when his trial counsel failed to investigate and present readily available evidence of Ramirez's neurodevelopmental disabilities, brain damage, and mental illness." (ROA.1190.) Claim One is squarely focused on trial counsel's failure to investigate or present mitigating mental health evidence. This is the same claim that the state court found waived and withdrawn from the state habeas proceeding—trial counsel's ignorance of the evidentiary rules is fairly and necessarily included here because it shares a legal basis with the state court ineffectiveness claim and is in fact the cause of many of counsel's failures. (ROA.15787.) It is also the same claim that the magistrate court found unexhausted and procedurally defaulted and labeled as Claim 1A in its R&R. (ROA.3392–93.) After finding the claim unexhausted, the magistrate court never reached its merits.

Respondent argues, as he did below, that "Ramirez cannot disaggregate his broad IATC-at-sentencing claim to create a new, unexhausted claim in order to evade § 2254(d)," citing *Nelson v. Lumpkin*, 72 F.4th 649 (5th Cir. 2023) for support. (Opp. at 26.) Ramirez has done no such thing, and *Nelson* is inapposite. *Nelson* turned on a finding that Nelson's claim had been adjudicated on the merits in the state court proceedings. 72 F.4th at 657. Ramirez's claim that trial counsel was ignorant of a controlling rule of evidence is an element of Claim One's contention that trial counsel failed to present mitigating mental health evidence—a claim the state court found waived, the magistrate found unexhausted, and that habeas counsel procedurally defaulted. The claim was not adjudicated in the state

3

court proceeding and therefore is not subject to AEDPA. What's more, *Nelson* recognizes that the procedural default of a claim may be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013). *Nelson*, 72 F.4th at 657.

Nelson's principal claim in his state and federal proceedings was that his trial counsel had failed to sufficiently investigate and present mitigating evidence. *Id*. at 654. But in the federal proceeding he added the claim that trial counsel had failed to investigate his level of participation in the offense. However, the jury was already aware of this issue because defense counsel had argued and litigated it in the proceedings. *Id*. at 655–56. What's more, Nelson "concede[d], as he must, that both claims are 'similar.'" *Id*. at 659. Thus, the court found the new claim exhausted, and it had no trouble finding that his new claim had not fundamentally altered the claim presented in the state court. *Id*. As such, Nelson was unable to demonstrate that his claim was unexhausted or that it had not been adjudicated in the state court proceeding. *Id*. at 660.

Ramirez's case is strikingly different from Nelson's. First, in Ramirez's case the state court explicitly ruled that it would not adjudicate what is now the substance of Claim One (which the magistrate judge labeled Claim 1A). Respondent fails to explain how an unadjudicated claim could have been adjudicated by that same court. Similarly, the Magistrate Judge concluded that Claim 1A was "*never presented*" to the state court. (ROA.3392–93 (emphasis added).) "[T]he relitigation bar does not apply where the prisoner fails altogether to present a certain claim in state court." *Nelson*, 72 F.4th at 658.

Second, in *Nelson*, the state habeas court considered "all of the exhibits and materials filed by each party, and the entire record of the . . . habeas proceedings,"

adjudicated the claim, and denied Nelson relief on the merits. *Id*. at 659. In Ramirez's case, the court did the opposite. Third, the claim in Ramirez's state habeas proceeding and Claim 1A are not similar; they are emphatically dissimilar. Ramirez's state habeas counsel failed to present a substantial, relief-worthy, meritorious claim of ineffective assistance of trial counsel, and instead raised a skeletal claim barely scratching the surface of available mitigation. (*See* Ramirez Objection, ROA.3518–24.) Fourth, *Nelson* had no occasion to decide, nor did it hold, that an unexhausted, procedurally defaulted "substantial" claim alleging ineffective assistance of trial counsel, would be exempt from the *Martinez*-created exception to procedural default. For that reason alone, Ramirez's case sits squarely outside the scope of the *Nelson* ruling. In other words, *Nelson* stands for the proposition that if a petitioner fairly presents a claim to the state habeas court and that court adjudicates it on the merits, a petitioner cannot render the claim unexhausted and unadjudicated by simply "point[ing] out more instances of trial counsel's alleged deficient performance at sentencing in the federal court claim." *Nelson*, 72 F.4th at 659. That is not what Ramirez has done here.

Fifth, under § 2254(d), the relitigation bar applies only to a federal-court *claim* that was adjudicated on the merits in state court. "The habeas corpus statute . . . [does] not define 'claim,' but we take it to bear its *usual meaning* in federal pleading of a set of facts giving rise to a right to a legal remedy." *Bennett v. United States*, 119 F.3d 470, 471–72 (7th Cir. 1997) (emphasis added). Courts apply this "usual meaning" of the word "claim" in case after case. *See, e.g.*, *In re Hill*, 715 F.3d 284, 294 (11th Cir. 2013) (emphasis added) (defining claims with reference to "core factual allegation . . . *and* the core legal basis");

5

*Franklin v. Jenkins*, 839 F.3d 465, 475 (6th Cir. 2016) (citing *Brannigan v. United States*, 249 F.3d 584, 590 (7th Cir. 2001) (Cudahy, J., concurring in judgment) ("[a] claim is therefore distinguished by its facts (specifically, by its 'nucleus of operative facts'), not just by the legal principle that it invokes or the body of law from which it derives")). Apart from the state court's explicit holding in Ramirez's case that it was not adjudicating the claim, the definition of "claim" itself takes Claim 1A outside the scope of § 2254(d).

Here, for any of the above reasons, Respondent fails to controvert either the state court decision declining to adjudicate the substance of Claim 1A, or the Magistrate Judge's corresponding finding that the claim was never presented and thus was unexhausted. Accordingly, reasonable jurists could debate the district court's determination that Ramirez had not established an excuse under *Martinez* and *Trevino* for the procedural default of Claim One, making issuance of a COA appropriate for this claim.

> **2. Reasonable jurists could debate the district court's finding that Ramirez did not meet his burden under *Martinez* and *Trevino* to prove that his state habeas counsel were ineffective for failing to raise his trial-counsel IAC claim.**

Respondent barely engages with the declaration from state habeas counsel about their failure to recognize the crucial evidentiary errors that trial counsel made with respect to the Texas Youth Commission ("TYC") records, resulting in procedural default. Instead, his argument is premised on the false assumption that Ramirez's "ignorance-of-the-law claim is plainly meritless," and indeed is so meritless that state habeas counsel would have

been "wise" to omit it. (Opp. at 44.) For the reasons explained in Ramirez's application for COA and below, that is incorrect.[1]

Respondent argues that Ramirez's trial counsel, Alma Garza, did not perform deficiently, and that any deficient performance did not prejudice him. He characterizes trial counsel's strategy—intending "to present information about Ramirez's life and upbringing through Ramirez's mother and sister"—as reasonable and simply thwarted by the fact that "the family had moved during the trial and counsel was unable to locate them to testify at punishment." (Opp. at 34.) In support, Respondent argues that it is reasonable for trial counsel "to assume that [the petitioner's] family members, who had been cooperative and had provided mitigating testimony in their interviews, would be willing to testify on his behalf at a trial that could result in a death sentence." (Opp. at 34–35 (citing *Allen v. Stephens*, 805 F.3d 617, 637 (5th Cir. 2015), *abrogated on other grounds by Ayestas v. Davis*, 584 U.S. 28 (2018)).) For the reasons below, Respondent's arguments fail; and because his brief arguments that state habeas counsel was not ineffective for failing to raise this claim post-conviction rely on the assumption that it was without merit, they are similarly unavailing.

First, as detailed in Ramirez's petition (*see* ROA.1162–63), that this was in fact trial counsel's strategy—let alone that it was a reasonable one—is belied by the record. Ramirez's mother, Juana, testified at a state post-conviction evidentiary hearing that while

---

[1] While Respondent devotes considerable space to his argument that Ramirez cannot satisfy the strictures of 28 U.S.C. § 2254(d), Ramirez's claim was not adjudicated on the merits in state court and thus § 2254(d) does not apply here.

her son's case was pending, she would call Alma Garza about three times per week. (ROA.1776–77.) When Garza did not return her calls, Juana had her daughter Janie drive her to Garza's office. (ROA.1777.) Juana confirmed that Garza had both her telephone number and her address in Donna. (ROA.1777–78.) She further testified that she had attended her son's trial until Alma Garza told her that her life was in danger and suggested that she move away. (ROA.1778.) Juana stated that even when she and Janie moved to Corpus Christi, she returned to attend portions of her son's trial. (ROA.1780.) She testified that Garza had their address and telephone numbers, even after they moved. (ROA.1779.) She called Garza to ask for updates and left a message with her secretary but did not hear back. (ROA.1780.) Ramirez's sister Janie confirmed her mother's account and testified that neither of Ramirez's defense attorneys ever asked her about her brother's childhood or his background. (ROA.1783–84.)

Second, it was unreasonable for trial counsel to rely on Ramirez's sister and mother—who was herself implicated in the TYC records as neglectful and abusive—when the TYC records are an exceptionally reliable, objective account of Ramirez's psychological history and mental health that were readily available to trial counsel. And to the extent that Ramirez's mother and sister could have laid some limited foundation for Dr. K. Allen to testify more broadly with respect to Ramirez's background, it was unreasonable for the state court to find counsel had adequately investigated Ramirez's background, and that they "were fully prepared by the time [Ramirez's] case went to trial." (ROA.15785–91.)

There is no dispute as to what the record shows. Unlike in *Allen*, where "trial counsel hired multiple investigators who interviewed 'family members, neighbors and paramours,'" here the belated mitigation investigation was strikingly limited to just a few witnesses. 805 F.3d at 637. Judged by any standard, this was not a constitutionally adequate investigation. Because trial counsel did not conduct a complete or thorough investigation, her conduct is reasonable "only to the extent that reasonable professional judgments support the limitations on investigation." *Wiggins v. Smith*, 539 U.S. 510, 533 (2003). On this score, the record contains no evidence to suggest that counsel had a basis for making a reasonable strategic judgment to limit the investigation.

What counsel did know from their limited interviews and the TYC records when they finally reviewed them, was that Ramirez "had received mental health treatment services, suffered from persistent depression and PTSD due to childhood trauma, had experienced suicidal thoughts, . . . engaged in serious substance abuse" from age ten, and had been neglected, abused and under the influence of older adult gang members from his early teens. *Ex parte Garza*, 620 S.W.3d 801, 823 (Tex. Crim. App. 2021). That these red flags did not trigger additional investigation was patently unreasonable. *Id*.

Of course, the problem was that counsel did not begin the mitigation investigation until after the start of the trial, when trial counsel, by their own admission, had not even begun to review the TYC records. The investigation was not narrowed based on reasonable professional judgment, but rather on inadvertence and neglect. On the facts in this record, any reasonable jurist would agree that trial counsel had not adequately investigated

9

Ramirez's background, and therefore they were not fully prepared at the time Ramirez's case went to trial. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Respondent next argues that trial counsel was not ineffective for failing to introduce the TYC records due to her ignorance of an evidentiary rule permitting their admission because even if the records had been admitted, Dr. K. Allen could not have testified about "the hearsay within those records," i.e., Ramirez's own statements to mental health professionals. (Opp. at 36.) This misunderstands the rules of evidence. As an initial matter, the Supreme Court has "recognized that reliable hearsay evidence that is relevant to a capital defendant's mitigation defense should not be excluded by rote application of a state hearsay rule." *Sears v. Upton*, 561 U.S. 945, 961 n.6 (2010) (citing *Green v. Georgia*, 442 U.S. 95, 97 (1979) (per curiam) ("Regardless of whether the proffered testimony comes within Georgia's hearsay rule, under the facts of this case its exclusion constituted a violation of the Due Process Clause . . . . The excluded testimony was highly relevant to a critical issue in the punishment phase of the trial"); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) ("In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice"); *see also United States v. Fields*, 483 F.3d 313, 330 (5th Cir. 2007) (in an analogous situation, holding that cross-examination of a witness offering hearsay testimony and an opportunity to rebut hearsay evidence are adequate protections against the use of hearsay information in a capital sentencing proceeding.). Accordingly, the evidentiary rule against hearsay would not have barred introduction of hearsay statements through Dr. K. Allen.

And even if the hearsay rules did apply, Respondent still misunderstands the exceptions to those rules. In support of his hearsay argument, but without further analysis, Respondent cites *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991) for the proposition that Ramirez's statements within the records "must fall within another hearsay exception to be admissible." Opp. at 36-37. *Wilson* did not involve a capital sentencing proceeding and did not decide whether admission of business records was error. This Court found that hospital records kept in the regular course of business satisfied the first-level hearsay exception but deemed it a "closer question" as to whether statements therein that appellant's sister made to a social worker that he was a "habitual liar" satisfied a separate hearsay exception. *Wilson*, 939 F.2d at 271.

The *Wilson* Court noted that under Evidence Rule 803(4), statements made for purposes of medical diagnosis or treatment are not hearsay, and "[t]he test, when examining whether statements contained in medical records relating to a patient's condition are admissible hearsay, is whether such statements are of the type pertinent to a physician in providing treatment." *Id*. The rule excepts from hearsay any statement that "is made for – and is reasonably pertinent to – medical diagnosis or treatment; and describes medical history, past or present symptoms or sensations; their inception; or their general cause." Rule 803(4)(A), (B). These include statements made for purposes of a psychiatric diagnosis, and the out-of-court statements do not have to "refer to the condition of the declarant." *Wilson*, 939 F.2d at 272. The Court noted that the sister's statements "could be appropriate and helpful background information for the psychiatrists to consider in the diagnosis and treatment of Wilson's complaints," but declined to determine whether it was

11

error to admit the records (under multiple theories of inadmissibility, including unfair prejudice). *Id*.

Even ignoring the well-established constitutional protections allowing hearsay in such a proceeding, *see supra*, Ramirez's statements to caseworkers, doctors, and mental health professionals—some of which also fall into the "then-existing mental, emotional, or physical condition" hearsay exception under Rule 803(3)—fall squarely within Rule 803(4)'s hearsay exception, and Dr. K. Allen could have testified about those statements as well. Accordingly, Respondent's arguments as to lack of prejudice fail. Further, and more importantly, this Court need not make such a finding because, in accordance with *Wiggins*, 539 U.S. at 510, the Fifth Circuit "agree[s] [] that in assessing [*Strickland*] prejudice, 'we need not . . . make the state-law evidentiary findings that would have been at issue at sentencing.' Consequently, we conduct our analysis by 'evaluat[ing] the totality of the evidence—both that adduced at trial, and the evidence adduced in the habeas proceedings.'" *Ruiz v. Stephens*, 728 F.3d 416, 424–25 (5th Cir. 2013) (quoting *Wiggins*, 539 U.S. at 536) (cleaned up); *see also Escamilla v. Stephens*, 602 F. App'x 939, 941–42 (5th Cir. 2015).

Citing *Carty v. Thaler*, 583 F.3d 244 (5th Cir. 2009), Respondent also argues that Ramirez counsel's performance was not deficient because the information contained in the TYC records was "largely cumulative" of that to which his mother and sister would have testified. (Opp. at 37.) Not so. As detailed in Ramirez's petition and application for COA, the TYC records counsel failed to admit due to her ignorance of the evidentiary rules were far more detailed and expansive than what Ramirez's mother and sister would or could

have testified about. Unlike in *Carty*, where the evidence in question was the testimony of more family members (in addition to those who did testify) who could have spoken to "Carty's dynamic life, intelligence, and generosity," the TYC records in this case are objective, documented evidence of Ramirez's decades of neglect, abuse, trauma, and mental-health struggles jurors never heard about—the kind of information the Supreme Court has repeatedly recognized is critical mitigation evidence. *See, e.g.*, *Porter v. McCollum*, 558 U.S. 30, 39–40 (2009); *Rompilla v. Beard*, 545 U.S. 374, 392–93 (2005); *Wiggins*, 539 U.S. at 534–35; *Williams v. Taylor*, 529 U.S. 362, 395–96 (2000); *Eddings v. Oklahoma*, 455 U.S. 104, 113–16 (1982); *Lockett v. Ohio*, 438 U.S. 586, 607 (1978).

Moreover, these are precisely the type of records—from the same juvenile system—that the Texas Court of Criminal Appeals ("TCCA") deemed significant enough to warrant post-conviction relief for counsel's failure to introduce them in Ramirez's co-defendant Humberto Garza's case. *Ex parte Garza*, 620 S.W.3d 801. Respondent attempts to minimize the similarity between the two cases by pointing out that Garza's counsel did not appoint a mitigation specialist; relied on the family to locate penalty-phase witnesses; conducted minimal interviews of those witnesses; and did not try to obtain school records.[2]

---

[2] Respondent also makes the argument that "Ramirez's trial counsel appointed two mitigation specialists: Dr. [K.] Allen and Gilda Bowen." (Opp. at 38.) Dr. K. Allen was not a mitigation specialist. She was an expert witness on child development and attachment whom trial counsel retained to review records collected by Bowen, and the trial court characterized her as such. (*See* ROA.1094; ROA.18966; *see also* USDC ECF No. 32 Ex. S5 (sealed).) As Ramirez noted in his application for COA, "On cross-examination, Dr. Allen admitted she had no personal knowledge regarding the specifics of Ramirez's background. (ROA.10168.)." (ECF No. 40 at 27.) Considering that a mitigation specialist's role is to investigate the specifics of their client's background, Dr. K. Allen cannot be

(Opp. at 38.) In Ramirez's case, counsel waited more than a year to request that a mitigation specialist be appointed, then neglected to inform the mitigation specialist for another month that she'd been appointed. By that time, trial was three months away—hardly enough time to conduct an adequate mitigation investigation, especially for a "specialist" who had never worked on a death-penalty case before and had never investigated mitigation. (ROA.1205.) She requested Ramirez's school records so late that she only received them several days before the penalty phase of the trial began, when it was too late to use them effectively, and she never requested Ramirez's TYC records. (ROA.1206.) As in Humberto Garza's case, very few potential witnesses were interviewed; Ramirez's mitigation specialist only interviewed three—his mother, his father, and a former girlfriend, and his parents were not interviewed until voir dire was already underway. (ROA.1210.)

Respondent's attempts to distinguish the *Garza* case to demonstrate that Ramirez did not suffer similar prejudice likewise fail. The CCA noted that the case was a close one because of the substantial aggravating evidence in Garza's case, including the fact that he was a captain and leader of the gang with authority to make decisions; engineered the plan that resulted in the deaths of the six victims in this case; called or directed others to call the other gang members to commit the robbery; "made the decisions" about how to commit the robbery; arranged for the delivery of firearms the gang members used; and facilitated its execution by acting as the getaway driver. *Ex parte Garza*, 620 S.W.3d at 825-26. None of these aggravating facts are present in Ramirez's case. Respondent argues that while in

_____

considered a mitigation specialist as that term is used in capital sentencing proceedings, and Respondent's attempts to characterize her as such is misleading.

14

Garza's case, the TCCA noted that the TYC records "would have provided jurors with important context about [Garza's] life," in particular his childhood and mental health, in Ramirez's case counsel highlighted his "behavioral improvements at the Evins detention center." (Opp. at 39.) Highlighting behavioral improvements while at a detention center is not equivalent to exposing for the jury the rampant abuse, trauma, and mental-health issues Ramirez suffered as a child—the very same things that the TCCA in Garza's case determined counsel should have presented to the jury, and that the failure to do so (even with the extreme aggravating evidence in Garza's case) prejudiced the outcome of the trial. Garza's "[t]rial counsel's punishment case was underwhelming;" so was Ramirez's, for very similar reasons. *Ex parte Garza*, 620 S.W.3d at 825.

Accordingly, reasonable jurists could debate the district court's determination that Ramirez did not meet his burden to overcome state habeas counsel's default of this claim, and a COA is warranted.

## Claim 4H

**Ramirez's Fifth, Sixth, and Fourteenth Amendment rights were violated when the trial court failed to suppress Ramirez's involuntary statements derived from his police interrogation.**

A COA should also issue as to this claim. The question before this Court is not whether Ramirez will prevail on this claim, but rather whether, after conducting a "threshold inquiry," the Court concludes that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Skinner*, 528 F.3d at 340-41 (quoting *Miller-El*, 537 U.S. at 336, 338). Ramirez has met his burden to show that

15

reasonable jurists could disagree with the resolution of this claim below and it deserves encouragement to proceed further. *See Buck*, 580 U.S. at 115.

1. **Reasonable jurists could debate whether new evidence offered in support of Claim 4H renders it unexhausted and whether any default is overcome by the *Schulp* actual innocence gateway.**

Reasonable jurists could debate the district court's denial of Ramirez's Claim 4H in which Ramirez offers compelling evidence of his actual innocence. Below, Ramirez offered new evidence in support of his claim that his constitutional rights were violated when the trial court denied his motion to suppress involuntary statements made to law enforcement. This new additional evidence—a declaration by co-defendant Marcial Bocanegra who now admits to committing the acts Ramirez confessed to and an amended expert report opining about Ramirez's particular susceptibility to giving a false confession—is material, was not presented to the state court, and therefore renders the claim unexhausted. *See Conner v. Quarterman*, 477 F.3d 287, 291 (5th Cir. 2007). Ramirez can overcome any procedural barriers to consideration of the unexhausted claim through the actual-innocence gateway established in *Schlup v. Delo*, 513 U.S. 298 (1995).

Respondent argues that Ramirez's claim fails because he did not contest the state court's decision. (Opp. at 51.) This argument is unavailing because he could not have contested a claim that the state court never adjudicated. Ramirez properly presented new evidence in support of his objection to the magistrate's report and recommendation. 28 U.S.C. § 636 ("The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."). This new evidence fundamentally alters the claim previously presented to the state court because it puts the claim in a "significantly different

and stronger position," thus constituting a new, unexhausted claim. *Conner*, 477 F.3d at 292 (internal citation omitted); s*ee also Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003). This evidence, a declaration from co-defendant Bocanegra in which he confesses to the acts Ramirez was accused of committing, significantly changes the claim because it confirms, for the first time, that Ramirez is not the person Bocanegra previously described as "Lenny." Instead, Bocanegra reveals that "Lenny" was a name he made up to direct attention away from his own criminal actions and onto some unknown person. This evidence, taken in combination with the expert report of Dr. Davis, which provides an objective, scientific explanation for why Ramirez would have falsely confessed to being "Lenny" while under duress, and casts serious doubt on the reliability of his purported confession and overall guilt. This is a fundamentally different claim from the one adjudicated by the state court. Ramirez therefore could not have contested this new, unexhausted claim in the district court.

Respondent next argues that *Pinholster* bars the consideration of new evidence that merely supplements an exhausted claim. (Opp. at 52.) However, as described above, Ramirez's Claim 4H is new and unexhausted. Moreover, in *Schlup*, the Supreme Court established an actual-innocence gateway, which permits Ramirez to overcome any procedural barriers to consideration of this unexhausted claim. Passage through the gateway is permitted if the claim of innocence is supported "with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. In short, when evaluating evidence of actual innocence, courts must consider all evidence that is both

relevant and reliable. *Id.* at 327. *Schlup* therefore provides a mechanism for introducing new evidence that might otherwise be barred from consideration if it supports an actual-innocence claim, as it does here.

Respondent also unsuccessfully relies on *Nelson* to support the position that Ramirez cannot use new evidence to effectively un-exhaust a claim raised in the state court. (Opp. at 53.) *Nelson* arose out of a *Strickland* ineffective-assistance-of-counsel claim that turned on whether Nelson's additional examples of trial counsel's deficient performance in federal court were sufficient to fundamentally alter the claim adjudicated in the state court. *Nelson*, 72 F.4th at 659. In denying *Nelson*, this Court stated that the only difference between the claim presented in state court and federal court was the presentation of "more instances of trial counsel's alleged deficient performance," which did not alter the claim. *Id*. Here, Ramirez does not simply provide additional examples of evidence already presented in state court, he offers a new declaration where a co-defendant admits to committing the crimes in which Ramirez was convicted of participating. This is significantly different from the evidence presented to the state court and is sufficient to render the claim unexhausted.

Further, in *Nelson* this Court differentiated *Strickland* IAC claims, which it characterized as specific to a particular stage in the proceedings, from other claims, like *Brady* claims, that are specific to particular pieces of material evidence. *Id*. In these circumstances, if new material evidence of a *Brady* violation were to be presented it would not be considered adjudicated on the merits in state court, even if a *Brady* claim based on different evidence had been previously raised in state court. *Id*. This is akin to the evidence

that Ramirez presents now: a new piece of material evidence that indicates someone else committed the acts Ramirez falsely confessed to committing, which calls into question the reliability of his coerced confession. *Nelson* therefore supports Ramirez's claim, rather than undermines it.

Respondent next argues that even if the evidence fundamentally alters Ramirez's claim, it does not qualify as "new" under *Schlup* because it was always within the reach of his knowledge. (Opp. at 54.) However, in making this argument, Respondent refers only to Dr. Davis's updated report, completely ignoring that Bocanegra's new declaration, which was dependent on Bocanegra finally confessing, clearly qualifies as the type of new evidence contemplated by *Schlup*. The Court specifically considered post-trial affidavits as "new evidence." *Schlup*, 513 U.S. at 311 n.21, 312 n.25. Additionally, the Court cited to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id*. at 324. Both pieces of new evidence offered by Ramirez qualify as "new" evidence under *Schlup*.

Finally, Respondent argues that Ramirez fails to show that his new evidence permits him to pass through the *Schlup* gateway. (Opp. at 55.) To do so, Ramirez must show that it is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. Respondent's argument that Ramirez fails to show that no reasonable juror would have convicted him is based on the fact that Ramirez confessed. (Opp. at 55.) But his confession, and any evidence related to the details of that confession are undermined by Bocanegra's declaration, where he states that Ramirez was not the person he identified as Lenny in his statement to the police, that Ramirez was not involved

in the crime at all, and that it was Bocanegra who in fact committed the acts that led to Ramirez's conviction. If presented with the confession of a co-defendant and a scientifically based expert report establishing Ramirez's susceptibility to false confessions, including his youth and his lower cognitive functioning because of brain damage and trauma, it is likely that reasonable jurors would not have found him guilty beyond a reasonable doubt.

When considering evidence under *Schlup*, this Court must look at "the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Schlup*, 513 U.S. at 330–32. Here, the district court refused to properly consider the strong evidence of Ramirez's innocence set forth *supra* and detailed in his application for a COA. Ramirez's new evidence provides significant support for reasonable jurists to disagree with the district court's resolution of Claim 4H, including the denial of Ramirez's request for an evidentiary hearing to assess the credibility of Bocanegra's statement under oath, and a COA should issue as to this claim.

## Conclusion

The Court need not and should not reach the merits of Ramirez's claims. Rather, the Court must only make a threshold determination that Ramirez has made a substantial showing of a denied constitutional right. He has done so here. Because reasonable jurists could debate the district court's decisions as to both Claim 1 and Claim 4(H), Ramirez respectfully requests that this Court issue a COA as to both claims and order briefing and argument.

Respectfully submitted this 5th day of January, 2026.

| | |
|---|---|
| JON M. SANDS | JENNIFER Y. GARCIA (AZ NO. 021782) |
| FEDERAL PUBLIC DEFENDER | *Counsel of Record* |
| District of Arizona | SONIA L. FLEURY (CA NO. 298534) |
| | ASSISTANT FEDERAL PUBLIC DEFENDERS |
| | 250 North 7th Avenue, Suite 600 |
| | Phoenix, Arizona 85007 |
| | (602) 382-2816 voice |
| | (602) 382-2800 facsimile |
| | Jennifer_Garcia@fd.org |
| | Sonia_Fleury@fd.org |
| | *s/ Jennifer Y. Garcia* |
| | JENNIFER Y. GARCIA |
| | ASSISTANT FEDERAL PUBLIC DEFENDER |

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit and the word limit of Fed. R. App. P. 32(a)(7)(B). Excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,726 words.

This document also complies with the typeface requirements of Fed. R. App. P. 32 (a)(7)(B)(i) and Fed. R. App. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally-spaced typeface using Microsoft Word in size 14 Times New Roman font.

*s/ Jennifer Y. Garcia*
JENNIFER Y. GARCIA
ASSISTANT FEDERAL PUBLIC DEFENDER

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2026, I electronically filed the foregoing to the Clerk's Office by Using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

*/s/ Daniel Juarez*

Assistant Paralegal
